# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Stafford Glen Poff, Sheria Maynard,**
**Travis Williamson, Chris Booton,**
**Sean Johnson, Chester Maynard, James Ward,**
**Paul Baker, Aaron Farley,**
**Wade R. Wellman, and Nathan Triplett,**
**Plaintiffs Below, Petitioners**

**FILED**

**November 10, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**v. No. 24-105** (Wayne County Civil Action Nos. 19-C-31, 19-C-56, 19-C-57, 19-C-60, 19-C-61)

**Wayne County Commission,**
**Defendant Below, Respondent.**

## MEMORANDUM DECISION

In these cases, the Circuit Court of Wayne County, West Virginia certified two questions to this Court, asking:

> 1. Whether [the Wayne County Commission's ("the respondent")]'s former written policy and practice of paying ninety percent (90%) of healthcare insurance premiums for deputy sheriffs who work 20-24 years and retire at the age of 50 created a vested right to retiree health insurance benefits for [the Wayne County Deputy Sheriffs ("the petitioners")].
>
> [Circuit Court's] Answer: No
>
> 2. Whether [the petitioners] may proceed with claims sounding in detrimental reliance, false and misleading statements, unjust enrichment, quantum meruit and breach of contract to enforce [the respondent]'s former written policy and practice of paying a percentage of healthcare insurance premiums for deputy sheriffs who work 20-24 years and retire at the age of 50.
>
> [Circuit Court's] Answer: Yes

1

These questions flow out of a series of lawsuits[1] brought by the petitioners,[2] alleging that the respondent[3] provided a long-standing compensation package that included retiree health insurance benefits, which the petitioners assert formed a contract that could not be unilaterally altered. The matter below had proceeded to the summary judgment stage when the circuit court certified these two questions to this Court. Upon our review, it is clear the threshold factual determination of whether the petitioners had an enforceable contract or property interest in their health insurance benefits has not been made. The circuit court has also not resolved the factual questions necessary to determine whether the adoption of the health insurance benefits was an ultra vires act. As to the second question, whether the petitioners "may proceed" with its claims of unjust enrichment, quantum meruit, detrimental reliance, and false and misleading statements, answering this question would require this Court to delve into factual issues that are neither settled nor stipulated and would require us to issue an impermissible advisory opinion.

This Court has considered the parties' briefs, the record before us, and the oral argument of the parties. Given this posture, we respectfully decline to answer the certified questions and find that a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioners are Wayne County Deputy Sheriffs. They represent that, as early as 1988, the respondent offered its retired deputy sheriffs certain healthcare benefits. It is alleged that these benefits included paying 90% of health insurance premiums for deputies who retired at age 50 after being employed for 20-24 years. By a vote of the county commission, the respondent formally adopted this policy in 2011, for deputy sheriffs who had been hired prior to that year. The petitioners allege, and the respondent vehemently denies, that these actions formed a contract and created a vested property interest in the petitioners.

In 2017, the respondent changed its policy, raising the age of eligibility for retiree health insurance benefits from 50 to 60 for those who had been employed for 20-24 years, and whose employment began before 2011. It also decreased the amount of health insurance premiums that it would pay for retirees to 50%. Following these changes, the petitioners filed multiple individual lawsuits in the Circuit Court of Wayne County, claiming that the respondent's provision for retiree healthcare benefits created a contract, which the respondent had breached, and that the petitioners had a vested property interest in the insurance benefits. Additionally, the complaints set forth claims of unjust enrichment, quantum meruit, detrimental reliance, and false and misleading

---

[1] A total of five separate lawsuits were filed below. The circuit court certified these questions in all five civil actions.

[2] The petitioners are represented by counsel, Gail Henderson-Staples and Dwight J. Staples. All complaints allege that the petitioners were Wayne County Deputy Sheriffs.

[3] The respondent is represented by counsel, Jacob D. Layne in Wayne County Civil Action 19-C-31. In the other Wayne County Civil Actions, the respondent is represented by counsel, Webster J. Arceneaux, III and Sandra Henson Kinney.

statements. In support of their claims, the petitioners alleged that they accepted their positions at an artificially low wage or forewent other job opportunities because they had been told that they would receive health insurance upon retirement, based upon the respondent's earlier policy.

The matters below progressed to the summary judgment stage. When briefed before the circuit court, the parties' respective arguments were substantially the same as those raised in this proceeding. The petitioners maintained that there existed a binding contract that the respondent breached, and the petitioners had a vested property interest in the health insurance benefits. The respondent argued before the circuit court that no such contract existed and, even if one had been formed, any contract was an ultra vires act and, therefore, unenforceable.[4] Alternatively, the petitioners argued that in the absence of a contract, the fact that the petitioners forewent other jobs and remained employed by the respondent at a lower wage entitled them to recover under the disputed equitable theories noted above.

Following unsuccessful mediation,[5] the parties jointly moved the circuit court to stay the proceedings below to allow them to present a motion to certify questions to this Court. The circuit court granted that motion and the parties presented a joint motion to the circuit court to certify the above-stated questions to this Court. In its order granting the joint motion to certify, the circuit court acknowledged some of the unresolved factual disputes upon which the certified questions turn:

> [The respondent] argues, among other things, that health insurance benefits are not "vested benefits" because they are funded on a year-to-year basis, from a budget that is likewise funded annually to cover expenses that occur over the course of a single fiscal year. [The respondent's] consultant advised as to the increasing cost of retiree health insurance in the future, and [the respondent] realized that it was no longer able to afford to pay for this benefit. [The respondent] further asserts that retiree health insurance benefits cannot "vest" for [the petitioners] because they have not contributed anything into a plan funding such benefits.
>
> Contrarily, the [petitioners] assert that they worked for several years and they detrimentally relied on the [respondent's] written policy and forewent higher paying job opportunities and pay raises so that they could retire at age 50 after twenty (20) years of

---

[4] The respondent argued that the policy violated West Virginia Code § 11-8-26, which prohibits a county from incurring obligations in excess of funds available for current expenses, and West Virginia Code § 7-5-20, which states that "[w]hen a participating officer or employee shall retire from his office or employment, he may, if he so elects and the insurance carrier or carriers agree, remain a member of the group plan by paying the entire premium for coverage involved." As we conclude that we have no jurisdiction to answer the certified questions, we make no findings regarding these issues.

[5] Other issues not relevant to this matter were resolved at mediation.

3

service and receive ninety percent (90%) of their healthcare insurance premiums paid by the [respondent]. . . .

. . . [The petitioners] claim that the 2011 written policy and practice gave them a vested right to unchanged retiree health insurance benefits and that they are entitled to retire at age 50 and receive [respondent]-paid retiree healthcare insurance premiums for their lifetimes if they work for the [respondent] for at least 20 years. [The petitioners] further argue that they detrimentally relied on the [respondent's] written policy.

[The petitioners] assert that they have a vested right to these benefits because they accepted "an artificially low wage" and forwent pay raises and other deputy job opportunities in other jurisdictions that paid more "due to the benefit of health care benefits starting at the retirement age of fifty years old."

Finally, the circuit court found that "these issues present a matter of first impression in West Virginia and there is no clear controlling West Virginia precedent to guide its decision." We docketed the certified questions and set this matter for oral argument.

## II. STANDARD OF REVIEW

"The appellate standard of review of questions of law answered and certified by a circuit court is de novo." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). As a part of that review, we are mindful that we have recently reaffirmed that this Court will not issue advisory opinions. *See* Syl. Pt. 3, *City of Huntington v. AmerisourceBergen Drug Corp.*, 251 W. Va. 637, 915 S.E.2d 828 (2025) ("Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes.") quoting Syl. Pt. 2, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991). We now turn to the overarching issue in this matter – whether the certified questions are properly before us.

## III. ANALYSIS

We recognize the importance the parties have placed upon the resolution of these two certified questions. However, disputed facts permeate the questions certified to this Court. As such, we must decline to answer them.

Neither party challenged the jurisdiction of this Court. Notwithstanding the parties' acquiescence in the fundamental question of jurisdiction, "[t]his Court will make an independent determination of whether the matters brought before it lie within its jurisdiction." Syl. Pt. 1, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded by statute on other grounds*, W. Va. Code § 58-5-2, *as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017) (regarding Syl. Pt. 4 of *Lewis*).

4

To begin this analysis, we look to the provisions of West Virginia Code § 58-5-2, that grant this Court discretionary authority to answer "any question of law" certified to it by circuit courts. This statute, which "govern[s] the procedure for presenting interlocutory decisions of a lower court to this Court by certificate, being in derogation of the common law, is strictly construed." Syl. Pt. 1, *State v. Brown*, 159 W. Va. 438, 223 S.E.2d 193 (1976). Thus, "[t]he question of certifiability of decisions of [a] lower court to this Court is one which goes to the jurisdiction of this Court." Syl. Pt. 2, *Id*.

Recently, this Court issued a series of opinions emphasizing the need for undisputed facts before a court can answer a certified question. *See SWN Prod. Co., LLC v. Kellam*, 247 W. Va. 78, 875 S.E.2d 216 (2022); *Clark v. W. Va. Consol. Pub. Ret. Bd. (Clark II)*, 252 W. Va. 143, 919 S.E.2d 46 (2025); *City of Huntington*, 251 W. Va. 637, 915 S.E.2d 828.[6] First, in *Kellam*, this Court reformulated three questions certified to it by the United States District Court for the Northern District of West Virginia into one and declined to answer the reformulated question, because whether an oil and gas lease contained a "method of calculating the deductions is a matter left in the capable hands of the court and the fact-finder, as appropriate." *Id*., 247 W. Va. at 89, 875 S.E.2d at 227. In declining to answer the reformulated question in that case, this Court found that "[t]he answer to this [reformulated] question necessarily involves the exploration of contractual language, the possible need for interpretation of said language, and the development of facts to assist either the court or the factfinder, as appropriate." *Id*., 247 W. Va. at 81, 875 S.E.2d at 219.

---

[6] Prior to these three cases, this Court had a history of declining to exercise jurisdiction and respond to certified questions due to a disputed factual record. *See* Syl. Pt. 3, *Sage v. Boyd*, 145 W. Va. 197, 113 S.E.2d 836 (1960) ("Under the provisions of [West Virginia] Code [§] 58-5-2, this Court has no jurisdiction to review the sufficiency of a pleading on certification where the question raised must be disposed of by proof."); *Toler v. Shelton*, 159 W. Va. 476, 481, 223 S.E.2d 429, 432 (1976) (explaining that this Court lacks jurisdiction on a certified question requiring establishment of facts.). Indeed, we have long recognized that a set of precise and undisputed facts is necessary for this Court to coherently respond to a properly certified legal question. *See* Syl. Pt. 1, *State v. Stout*, 142 W. Va. 182, 95 S.E.2d 639 (1956) ("Under [West Virginia] Code [§] 58-5-2, this Court has no jurisdiction to determine a certified question of fact."). Simply stated, "certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case." Syl. Pt. 5, in part, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994) *superseded by statute on other grounds*, W. Va. Code § 58-5-2, *as recognized in Smith v. Consol. Pub. Ret. Bd.*, 222 W. Va. 345, 348 n.3, 664 S.E.2d 686, 689 n.3 (2008) (regarding Syl. Pt. 3 of *Bass*).

Second, in *Clark II* this Court was presented with two certified questions, the second of which contained unresolved facts on the issue of entitlement to attorney's fees.[7] This Court found that such question could not be answered:

> The question of whether or not a litigant has a viable claim for attorney's fees in a particular matter is necessarily dependent upon facts as well as the law. Here, this Court does not have before it any factual findings of the lower court or its application of the law to those facts. Accordingly, this Court believes it would be imprudent to attempt to answer a question regarding whether attorney's fees may be awarded other than as part of normal appellate review of a final, appealable order of the circuit court. To do so would preempt the tried and true process of civil litigation. Thus, because this question does not present an issue of law, we must decline to answer it.

*Id.*, 252 W. Va. at ___, 919 S.E.2d at 52.

Third, and finally, this Court refused to answer a certified question from the Fourth Circuit arising from underlying litigation concerning "the tragic effects of the opioid epidemic" where the legal conclusions necessary to resolve the question were contingent upon the resolution of myriad disputed facts. *See City of Huntington*, 251 W. Va. at ___, 915 S.E.2d at 835-37. Because of those disputed facts, this Court found that "with unsettled facts and related unreviewed legal conclusions, any answer would be advisory, even given a reformulation." *Id.*, 251 W. Va. at ___, 915 S.E.2d at 837-38. This Court then held:

> Pursuant to the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 to -13 (1996), we are simply asked to answer questions of law. Accordingly, the factual record regarding the legal issue in dispute must be sufficiently precise and undisputed, and this Court will assume that the findings of fact by the certifying court are correct. Further, the legal issue must substantially control the case.

Syl. Pt. 2, *Id.* Although we recognize that the enabling statutes for certification are different in questions certified from circuit courts and from federal courts,[8] the principle remains the same – this Court cannot answer certified questions that require it to conjure the facts necessary to respond to the question.

---

[7] Specifically, the second certified question asked, "Under the facts of this case, is Petitioner entitled to recover reasonable attorneys' fees from Respondent[?]" *Clark II*, 252 W. Va. at ___, 919 S.E.2d at 47.

[8] *Compare* W. Va. Code § 58-5-2 *with* §§ 51-1A-1 to -13.

Here, there remain disputed factual questions as to whether the petitioners had a contractual right to health insurance benefits or a property interest in them. The petitioners argue that they and the respondent were parties to a contract under which the respondent promised to pay their retiree health insurance premiums, as provided under the 2011 policy. They argue that their continued employment was sufficient consideration to make binding and enforceable the respondent's promise to pay those premiums. *See Citynet, LLC v. Toney, LLC v. Toney*, 235 W. Va. 79, 85, 772 S.E.2d 36, 42 (2015) ("[A]n employer's written promise to its employees constitutes an offer for a unilateral contract that can be accepted by an employee continuing to work while under no obligation to do so. . . ."). The respondent, on the other hand, characterizes the 2011 policy as just that—a policy that it was free to unilaterally modify and that created no right in the petitioners to the payment of retiree premiums in perpetuity. *See* Syl. Pt. 4, *Boggess v. City of Charleston*, 234 W. Va. 366, 765 S.E.2d 255 (2014) ("In the absence of a contractual obligation providing otherwise, a public employer is permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees and where the modification of the policy does not retroactively impair previously earned and vested rights, such as pension benefits."). As laid bare by this summation of their positions, the parties do not agree on—and the certification order does not resolve—whether a contract existed between the parties. This unresolved factual dispute is fatal to our ability to answer the first certified question.

As a practical matter, we cannot begin to address whether rights have "vested" under something without knowing the nature of the purported rights or what that "something" is legally. More problematically, pursuant to W. Va. Code § 58-5-2, only questions of law may be certified to this Court: "Any *question of law* . . . may, in the discretion of the circuit court in which it arises, be certified by it to the Supreme Court of Appeals for its decision . . . ." W. Va. Code § 58-5-2 (emphasis added); *see* Syl. Pt. 1, *Stout*. This is particularly true when examining whether a contract exists: "Generally, the existence of a contract is a question of fact for the jury." Syl. Pt. 4, *Cook v. Heck's Inc.*, 176 W. Va. 368, 342 S.E.2d 453 (1986).

Further still, we lack the required "sufficiently precise and undisputed factual record on which the legal issues can be determined." Syl. Pt. 5, in part, *Bass*; *see supra* note 6. As evidenced by the questions the parties submitted to the circuit court for certification to this Court, it appears that the parties only agree that, beginning in 2011, the respondent had a written policy addressing the payment of retiree health insurance premiums that it amended in 2017. There is no agreement as to the facts beyond the existence of that written policy, and the remainder of the certification order contains only facts on which the parties do not agree. Likewise, the parties' summary judgment briefing, which comprises the bulk of the appendix record provided to this Court, reveals the absence of an undisputed factual record.[9] Indeed, factual issues such as when and how each

---

[9] For instance, Petitioner Stafford Glen Poff asserts that he accepted employment with the respondent because he was promised that if he worked 20 years, he could retire at age 50 and receive health insurance premium coverage. However, there is contrary evidence that the respondent made no promise regarding health insurance coverage at the time that Poff was hired. Additionally, Petitioner Sheria Maynard, too, offered evidence that she chose to remain employed

(continued . . .)

deputy sheriff learned of the policy were not resolved before the circuit court, and those facts inform whether an interest in the policy had vested, assuming such interests were determined in the first place.

Likewise, factual questions must be resolved before the circuit court may determine whether the adoption of the health insurance benefits was an ultra vires act, a determination that informs whether a valid contract or other legally cognizable interest could have been created. Considering whether the petitioner "may proceed with" claims of unjust enrichment, quantum meruit, detrimental reliance, and false and misleading statements presents similar fact-driven inquiries, individualized to each of the respective petitioners, that this Court cannot determine. Answering these questions would "preempt the tried and true process of civil litigation," *Clark II*, 252 W. Va. at ___, 919 S.E.2d at 52, and would require us to issue an impermissible advisory opinion. *See* Syl. Pt. 2, *Harshbarger*.

## IV.  CONCLUSION

For the reasons set forth above, we decline to answer these certified questions.

Certified questions declined.

**ISSUED**: November 10, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

by the respondent due to its retiree health insurance coverage policy, but the respondent points to evidence that no one promised her these future benefits, and that she "ha[d] no idea when or how she obtained a copy of the policy."